IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.   CASE NO. 1:03-cr-5-MMP-AK

DENNIS WAYNE LEFEBVRE,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 58, Motion to Vacate under 28 U.S.C. § 2255, with supporting memorandum, by Dennis Wayne Lefebvre. The Government has filed its response, Doc. 60, and Defendant has filed a reply. Doc. 61. This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

## BACKGROUND

Defendant was charged in a two-count Indictment with the manufacture and possession with intent to distribute more than 50 grams of a mixture and substance containing methamphetamine and with the distribution to a person under the age of 21 of a mixture and substance containing methamphetamine. Doc. 3. Defendant went to trial and was convicted on both counts, with the jury specifically finding that the amount of drugs at issue in Count One was "50 grams or more." Doc. 19.

Ten days later, Defendant moved for an independent chemical analysis of Government's

Exhibit 11. Doc. 22. According to Defendant, G-11 "contained a large amount of liquid with a small amount of methamphetamine contained within the unknown liquid," and an analysis of this exhibit was "necessary for the defendant's position at the sentencing hearing." *Id*. The Court granted the motion. Docs. 28 & 31.

In the Presentence Report (PSR), the probation officer determined that Defendant was responsible for 135.2 grams of a substance containing methamphetamine. PSR at ¶ 17. This conclusion was based on the DEA laboratory examination of "the solution recovered at the campsite," which it "measured as...135.2 grams of a solution containing methamphetamine." *Id*. at ¶ 11. Defendant objected to ¶ 17 on the grounds that it "over represents the actual quantity of drugs." Doc. 25. In support of the objection, he pointed to G-11, which showed "a total net weight of 0.46 grams." *Id*. Thus, instead of a base offense level of 26, the level should have only been 12. *Id*.

At sentencing, Defendant continued his argument that although the Government proved and the jury found that there was a mixture of over 50 grams containing methamphetamine, the Government did not have to prove that the mixture "was consumable or that it's not a waste by-product." Doc. 49. Instead, "[i]t was totally a sentencing issue where, as of the 202 grams of a substance containing that methamphetamine, how many grams of that should actually be used towards sentencing," since there were "non-consumable toxic by-products" in G-11. *Id*.

The Court overruled the objection and sentenced Defendant to 112 months imprisonment on each count to run concurrently. Doc. 39. Defendant appealed, arguing that the Court erred "in sentencing him based upon the entire weight of the solution." Doc. 56. The Eleventh Circuit rejected this argument, finding:

> In the instant case, the government presented expert testimony that methamphetamine users sometimes "get high" by pouring solutions of the type attributed to Lefebvre onto their hands. While Lefebvre testified that the solution was "poisonous" and "waste by-product of the manufacturing process," this testimony, even if credited, demonstrates only the absence of a subjective intent to use the solution as a final product and would not demonstrate that the solution was unusable. Because the government's testimony was sufficient for the district court to find by a preponderance of the evidence that the solution was usable in the form in which it was found, we conclude that the district court did not commit clear error in holding Lefebvre responsible for the entire weight of the solution.

*Id*.

Defendant petitioned for a writ of certiorari, which was granted, and the Supreme Court vacated the judgment and remanded to the Eleventh Circuit for further consideration in light of *Booker*. *Lefebvre v. United States*, 543 U.S. 1108 (2005). On remand, Defendant conceded that he "did not raise any *Blakely* or *Booker* type issues in the district or appellate courts" but first raised the issue in his certiorari petition in the Supreme Court, and therefore, that plain error applied to the claim. Doc. 57. The Government conceded that the Court "erred when it sentenced Lefebvre pursuant to the sentencing guidelines." *Id*.

The court looked to the fact that Defendant "was sentenced in the middle of guidelines" to conclude:

> If the district court had any misgivings about the reasonableness of the sentencing guideline range, it would not have imposed a sentence above the bottom of the range. Moreover, the district court did not state at sentencing that the guideline range was too harsh or that it would have imposed a different sentence if the sentencing guidelines were not mandatory. The district court expressly stated that the sentence was reasonable given the amount of drugs and Lefebvre's criminal history. Accordingly, we conclude from the record that Lefebvre fails to prove that "there is a reasonable probability of a different result if the guidelines had been applied in an advisory instead of a binding fashion."

*Id*. (citation omitted). The court therefore reinstated the previous opinion and affirmed the convictions and sentences. *Id*.

The instant motion to vacate followed.

**DISCUSSION**

1.  Failure to challenge Government's expert witnesses.

In this claim, Defendant contends that counsel was ineffective because he "failed to have the witnesses proffered and certified as experts...." Specifically, he points to Ray Metrick, an investigator with the Columbia County Sheriff's Office assigned to the DEA Task Force, and Brett Starr, an investigator with the Gainesville Police Department assigned to the forensic crimes unit. Defendant did not contest Metrick's qualifications as an expert, and when he objected to Starr's giving "opinion testimony...without a proper foundation," the Court overruled the objection, stating, "He has been doing it 18 years and he can offer his opinion." According to Defendant, counsel, Tom Miller, was not "apprised in criminal law or the Rules of Evidence which later prejudiced him" and "subjected [him] to the wiles of the United States Attorney."

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance

in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). This standard is objective, and "it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight." *Gordon v. United States*, 496 F.3d 1270, 1281 (11th Cir. 2007). "The relevant question is not what actually motivated counsel, but what reasonable could have motivated counsel." *Id*. When the court "can conceive of a reasonable motivation for counsel's actions," it can deny the claim of ineffectiveness without evidentiary hearing. *Id*. "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Quite importantly,

>If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

First, any blanket suggestion that Mr. Miller does not know the rules of evidence or anything about criminal law is nonsense. Second, he attempted to challenge the foundation for Starr's testimony and was abruptly overruled. He could not do any more, and therefore, he did not act deficiently in failing to challenge the Court's decision further at that stage. On cross-

examination, he questioned Starr more about his qualifications, only to discover that of his 18 years of law enforcement experience, over nine years had been spent in the forensic unit alone. Thus, the Court was right in allowing Starr to testify as he did, and Defendant was not prejudiced by any alleged deficiency on counsel's part. Given Starr's extensive experience, he had more than enough "specialized knowledge" to determine whether there were any fingerprints on the evidence collected at the campsite and to advise the jury of his findings. *See* Fed. R. Evid. 702. Though it certainly is a better practice formally to tender a witness as an expert so that he then can be treated as such, Defendant was not prejudiced by counsel's failure to broach the subject further, as the Court would have formally found him to be an expert and allowed him to testify in the same manner in which he did.

Much of this applies equally to Metrick, who testified that based on his experience and contact with clandestine methamphetamine laboratories and methamphetamine "cooks," one could "get high" in a variety of ways during the manufacturing process itself, including putting the liquid form on one's hands. Metrick also had substantial law enforcement experience, and any challenge to his qualifications to render an opinion regarding methamphetamine production would have been overruled. Thus, counsel's failure to challenge Metrick as an expert did not prejudice Defendant.

2. Failure to present expert testimony regarding waste product and chemical analysis.

In this claim, Defendant charges that counsel rendered ineffective assistance by failing to have an expert of his own analyze G-11 before trial and then to testify regarding his findings at trial. This overlooks the strategy outlined in opening statements that Defendant was merely

present at the campsite and did not manufacture or distribute the methamphetamine found there. *See* Doc. 47. This was a reasonable strategy considering the fact that Defendant's fingerprints were not found on any item associated with the manufacturing process and the tents found on the site were not his.

Furthermore, for purposes of adjudicating guilt, it did not matter how much methamphetamine was in G-11, as the Government only had to prove that it did indeed contain some amount of methamphetamine. For sentencing purposes, the entire mixture was properly counted against Defendant if it was consumable. While Defendant testified at sentencing that he would not have sold or used the contents of G-11, it is undisputed that the expert Defendant secured after trial, a University of Florida chemist, concluded that while it would not be healthy to consume the contents of G-11, he was not sure whether it was considered a consumable by-product, but that, based on his experience and research, "there's enough methamphetamine in that substance to get a buzz." Thus, this expert would not have been helpful at trial, and Defendant's bald statement that there was no evidence that G-11 "contained usable methamphetamine" is flatly belied by the record.

Thus, Defendant has not shown deficient performance, and even if counsel should have secured the chemist's opinion before trial, Defendant was not prejudiced by the failure, since there is not a reasonable probability that the expert's opinion would have altered the outcome of the trial or sentencing.

3.      Failure to assure jury returned verdict as to drug quantity.

At the time of Defendant's trial, neither *Blakely* nor *Booker* had been decided. Indeed, certiorari was not even granted in *Blakely* until seven months after the verdict was rendered in

this case.  Furthermore, the verdict form used in this case was the approved form on which a jury was to assess drug quantity.  *See* Annotations and Comments, Offense Instructions 85, *Eleventh Circuit Pattern Jury Instructions–Criminal* (2003).  Thus, counsel did not act deficiently in failing to seek a determination of drug weight beyond that required by the pattern instructions in use at the time.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion to vacate, Doc. 58, be **DENIED.**

**IN CHAMBERS** at Gainesville, Florida, this 3rd Day of March, 2008.


S/A. Kornblum
**ALLAN KORNBLUM
UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**